NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GARMIN INTERNATIONAL, INC., GARMIN USA, INC.,**
*Appellants*

**v.**

**LOGANTREE, LP,**
*Appellee*

---

2020-1108, 2020-1109

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2018-00564, IPR2018-00565.

---

Decided: September 11, 2020

---

ADAM PRESCOTT SEITZ, Erise IP, P.A., Overland Park, KS, for appellants. Also represented by MEGAN JOANNA REDMOND.

CHRISTOPHER BARKLEY, McCathern PLLC, Los Angeles, CA, for appellee. Also represented by JAMES E. SHERRY, HOSSAIN ARNOLD SHOKOUHI, Dallas, TX.

---

Before O'MALLEY, REYNA, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Garmin International, Inc. and Garmin USA, Inc. (collectively, Garmin) appeal from two final written decisions of the Patent Trial and Appeal Board (the Board) upholding the patentability of certain claims of U.S. Patent No. 6,059,576 (the '576 patent). Because substantial evidence supports the Board's finding that Garmin failed to meet its burden of showing that the challenged claims are unpatentable under 35 U.S.C. § 103, we *affirm.*

BACKGROUND

The '576 patent is directed to a portable, self-contained electronic device, system, and method used "to monitor and train an individual on proper motion during physical movement." '576 patent at abstract. The disclosed electronic device is used to "track[] and monitor[] an individual's motion through the use of a movement sensor capable of measuring data associated with the wearer's movement," *id.* at col. 2 ll. 9–12, helping the wearer correct movement and form to ultimately reduce injuries, *see id.* at col. 1 ll. 55–60. To accomplish this, the device employs a microprocessor connected to a movement sensor that analyzes and responds to the user's movement data. *See id.* at col. 4 ll. 52–57. Claims 1 and 20 of the '576 patent[1] are representative:

1. A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:

a movement sensor capable of measuring data associated with unrestrained movement in any

---

[1] The '576 patent was the subject of an *ex parte* reexamination which resulted in part in the addition of limitations to both claims 1 and 20. These additions are reflected in the recitation of the claims.

direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data; and

an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;

wherein said movement sensor measures the angle and velocity of said movement.

'576 patent at claim 1.

20. A method to monitor physical movement of a body part comprising the steps of:

attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement in any direction;

measuring data associated with said physical movement;

interpreting, using a microprocessor included in the portable, self-contained movement measuring device, said physical movement data based on user-defined operational parameters and a real-time clock;

storing said data in memory;

detecting, using the microprocessor, a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data; and

storing, in said memory, first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred.

*Id.* at claim 20.

Relevant to this appeal, Garmin petitioned for *inter partes* review of claims 1 and 20, among others, of the '576 patent as obvious, relying on both Richardson[2] and Stewart[3] as primary references for its proposed obviousness challenges.   The Board upheld the patentability of all claims, finding that Garmin had not shown by a preponderance of the evidence that the challenged claims are unpatentable. *See Garmin Int'l, Inc. v. LoganTree, LP*, No. IPR2018-00564, 2019 WL 4072984 (P.T.A.B. Aug. 28, 2019) (*'564 Decision*); *Garmin Int'l, Inc. v. LoganTree, LP*, No. IPR2018-00565, 2019 WL 4072985 (P.T.A.B. Aug. 28, 2019) (*'565 Decision*).

---

[2]    U.S. Patent No. 5,976,083.
[3]    U.S. Patent No. 5,978,972.

Garmin appeals both decisions.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

Obviousness "is a question of law based on underlying findings of fact." *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000) (citation omitted).  We review the Board's factual findings for substantial evidence and its legal conclusions de novo. *Rambus Inc. v. Rea*, 731 F.3d 1248, 1251–52 (Fed. Cir. 2013).

Garmin first asserts that the Board incorrectly concluded that Stewart does not disclose a microprocessor interpreting the movement data as claimed in the '576 patent.  Garmin argues particularly that the Board's determination "rests on an unwritten and incorrect claim construction of 'a microprocessor.'"  Appellant's Br. at 8.  We disagree.

Before the Board, Garmin argued that Stewart's processor 52 is the claimed microprocessor of the '576 patent that interprets movement data. *See* J.A. 113; *see also '564 Decision*, 2019 WL 4072984, at *7.  Specifically, Garmin argued that processor 52 meets the claimed interpreting limitation because processor 52 "interpret[s] the accelerometer data by comparing it to a predetermined threshold."  J.A. 113.

In its decision, the Board explained that it was not persuaded that Stewart's processor 52 interprets the movement data as required by the '576 claims. *'564 Decision*, 2019 WL 4072984, at *7.[4]  Instead, the Board found that "Stewart's disclosure indicates that the comparing function is accomplished by a *receiver* remote from the self-

[4]     Because the Board's conclusions on the challenged issues are substantially the same in both proceedings, we cite to only the *'564 Decision*.

contained helmet system, thereby identifying at least one function that is *not* performed by the processor [52]." *Id.* at *8 (emphasis added) (citing Stewart at col. 14 ll. 6–9).

Garmin interprets this statement from the Board to mean that the Board believed this receiver in Stewart to be another processor, i.e., a second separate processor remote from the rest of the system. *See* Appellant's Br. at 15. Therefore, Garmin argues, the Board could have only reached the conclusion it did by limiting the '576 claim language as directed to solely one processor. To the contrary, the Board simply concluded that Garmin failed to meet the burden of proving its own theory of obviousness, that is, that processor 52 meets the microprocessor limitation of the '576 patent.

This determination from the Board is supported by substantial evidence. Garmin never asserted, prior to its briefing on appeal, that Stewart's ringside receiver was a processor, nor did it ever contend that the ringside receiver corresponded in any way to the claimed microprocessor limitation. In fact, when Garmin's petition quoted a relevant passage from Stewart, it cropped the reference to the "ringside receiver" from the quote. *See* J.A. 113. In response to the Board's concerns as to whether Stewart teaches the microprocessor claim limitation, Garmin pointed only to the disclosure from Stewart that processor 52 "controls the operation of the [] system." Stewart at col. 8 ll. 61–62. The Board found, and we agree, that without further relevant evidence from Garmin, this general disclosure from Stewart is not sufficient to find that processor 52 controls *every* aspect of the system, and particularly, the comparing function.[5] Of note, Garmin does not now contest

---

[5] At the hearing in front of the Board, Garmin suggested that its expert opined on whether Stewart's processor performs the comparing process, *vel non*. The Board, however, correctly found that Garmin's expert merely

on appeal that it is Stewart's ringside receiver, as opposed to Stewart's processor 52, that performs the comparison function, *see* Appellant's Br. at 14–16—the sole process it asserted in its petition as disclosing the interpreting the movement data limitation of the '576 patent, *see* J.A. 113–14. Because Garmin did not present adequate evidence as to why Stewart's processor 52 performs the comparison function, the Board's finding that processor 52 does not interpret movement data as required by the '576 claims is supported by substantial evidence. Contrary to Garmin's assertion, the Board, in making this finding, did not rely on an overly limited claim construction; it instead simply identified a fatal flaw in Garmin's obviousness argument.

Garmin also challenges the Board's findings as to the microprocessor disclosed by Richardson. Just as with the Stewart reference, the Board concluded that Garmin did not meet its burden of establishing that Richardson discloses a microprocessor interpreting the movement data. *See '564 Decision*, 2019 WL 4072984, at *11. Garmin asserts that Richardson's microprocessor 123 interprets movement data as claimed, in particular by executing Richardson's "monitor sensors process 154" and "track user status process 156."

Though the Board agreed that the processes disclosed in Richardson meet the interpreting movement data limitation, the Board found that there was no explicit disclosure from Richardson that microprocessor 123 executed these processes. *Id.* The disclosures from Richardson to which Garmin now points are not dispositive on this issue. *See, e.g.*, Richardson at col. 16 ll. 12–20 (referencing a processor subsystem including a microprocessor and various

parroted attorney argument without any supporting evidence or reasoning. *'564 Decision*, 2019 WL 4072984, at *9. We see no reason to disturb the Board's finding that the expert's conclusory opinion was less than persuasive.

memory components).  These disclosures merely discuss a subset of the architecture of the system—they do not, as Garmin suggests, expressly disclose that the processor subsystem holds and executes the software instructions, *see* Appellant's Br. at 20.  Additionally, Garmin did not "assert that Richardson inherently discloses that microprocessor 123 executes monitor sensors process 154 or track user status process 156, or that this operation would have been obvious to one of ordinary skill in the art." *'564 Decision*, 2019 WL 4072984, at \*11.  Both Garmin's petition and expert declaration instead assumed, without explanation or evidence, that microprocessor 123 is the component in Richardson that performs these processes. *See, e.g.*, J.A. 153, 157.  Therefore, in the absence of an explicit disclosure, expert testimony on this point, and anything more than assumptive attorney argument, the Board's findings on this issue are supported by substantial evidence.  Put simply, a petitioner in an *inter partes* review has the burden of demonstrating unpatentability by a preponderance of the evidence; bare assertion through implication that a reference discloses a claim limitation, without more, is not enough to meet this burden.

## CONCLUSION

We have considered Garmin's remaining arguments and find them unpersuasive.  For the foregoing reasons, we affirm the Board's decision holding that Garmin did not prove that the challenged claims of the '576 patent are unpatentable.

## AFFIRMED